UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TORRI DURDEN,

Plaintiff, Civil Action No. 20-12161

v. Sean F. Cox
United States District Judge

MICHAEL J. BOUCHARD, *et al.*, David R. Grand
United States Magistrate Judge

Defendants.
______________________________________/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 27)**

On August 4, 2020, *pro se* plaintiff Torri Durden ("Durden"), an incarcerated person, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment. (ECF No. 1). Specifically, Durden claims that, on February 22, 2020, two members of a "cell extraction team" at the Oakland County Jail – defendants Otto and Jones (collectively, "Defendants") – used excessive force in attempting to subdue him, causing him injury and pain.[1] An Order of Reference was entered on June 28, 2021, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 16).

Before the Court is Defendants' Motion for Summary Judgment, which was filed

[1] In his complaint, Durden also alleged that Oakland County Sheriff Michael Bouchard failed to take action to prevent the physical abuse of inmates. (ECF No. 1). On September 16, 2020, an Opinion and Order of Partial Dismissal was entered, dismissing Durden's claims against Sheriff Bouchard. (ECF No. 4).

on February 11, 2022. (ECF No. 27). Durden filed a response to this motion on March 7, 2022. (ECF No. 29). No reply was filed.

Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 27)** be **GRANTED**.

## II. REPORT

### A. Factual Background[2]

By way of background, Durden, who is incarcerated at the St. Louis Correctional Facility, was convicted in December 2019 of first-degree criminal sexual conduct and assault by strangulation. *See People v. Durden*, No. 353012, 2022 WL 3009754, at *1 (Mich. Ct. App. July 28, 2022). On February 20, 2020, the trial court sentenced Durden as a fourth-offense habitual offender to concurrent prison terms of 18 to 50 years for the criminal sexual conduct conviction, and 9 to 50 years for the assault conviction. *Id.*

This lawsuit arises from an incident that occurred two days after Durden's sentencing, on February 22, 2020, while Durden was a post-conviction detainee in the Oakland County Jail. (ECF No. 1, PageID.7). On that day, Durden expressed frustration

[2] In his complaint, Durden asserts that the incident at issue in this case was captured on video. (ECF No. 1, PageID.7). Defendants have provided a copy of the video recording in connection with their motion for summary judgment. (ECF No. 32). Accordingly, unless otherwise noted, the Court will rely principally on that video evidence in describing the salient facts.

with his sentence by causing an incident at the jail. Specifically, according to the report prepared contemporaneous to the incident at issue, Durden began throwing an unknown brown liquid (that Defendants assert smelled like feces) out of his jail cell and into the adjoining hallway. (ECF No. 27-3, PageID.136). When approached by jail staff, Durden explained that he "threw shit because he was sentenced and didn't care...." (*Id.*). Durden was informed that he would need to be moved to another cell; he verbally refused to cooperate. (*Id.*, PageID.137). As a result, the Cell Extraction Team ("CET") was activated to remove Durden from his cell. (*Id.*).

At approximately 9:00 p.m., members of the CET arrived at Durden's cell to find him hiding behind a mattress that he had braced against the bars of his cell. (ECF No. 32, Ex. 3). He also had strung up a blanket and tied ripped pieces of bedsheets around his cell door and the cell bars to block the view into his cell. (*Id.*). Durden disregarded several loud verbal commands to come out from behind the blanket and mattress. (*Id.*). One member of the CET tried to gain Durden's compliance by deploying several rounds from a pepper-ball launcher, but Durden continued to throw unknown liquids at the deputies. (*Id.*). Unable to gain Durden's cooperation, the CET deputies were forced to cut the sheets away from the door and enter his cell to extricate him. Once inside, the CET removed Durden from under his bunk and placed him in handcuffs. (*Id.*, Ex. 4, 5).

A decision was then made to place Durden into a restraint chair so that he did not cause any further incident. (ECF No. 27-3, PageID.137). There is no indication from the video that Durden was in any distress at the time. Rather, Durden can be heard stating, "I know, I'm doing fine." (ECF No. 32, Ex. 5, 6). At one point, Durden even laughed at the

deputies as were trying to secure him in his restraints. (*Id.*, Ex. 7). Once Durden was seated in the restraint chair, he was transported to another cell where he was secured for temporary housing purposes. (*Id.*, Ex. 8, 9, 10). Subsequently, Durden was examined by the jail nurse, who cleared him of any threat of injury. (*Id.*, Ex. 10, 11). At approximately 9:15 p.m., the event concluded, and the CET deputies gathered outside of the cell to identify themselves and provide a summary of the circumstances for the video. (*Id.*, Ex. 11, 12).

Durden does not allege any mistreatment once he was out of his cell. (ECF No. 1). Rather, he alleges that "[d]uring me being extracted from my cell I informed officers pre-extraction that I had screws and plates in my left pelvis and ankle. During extraction, officers used this information to inflict cruel and unusual punishment by intentionally targeting my pelvis and ankle, stomping my ankle and knee causing tissue damage." (*Id.*, PageID.7). Durden further asserts that he offered no resistance and otherwise gave officers no justification for the use of force during removal from his cell. (*Id.*, PageID.5).

In his complaint, Durden pleads claims for excessive force (in violation of the Eighth Amendment) and state-law assault and battery against Deputies Otto and Jones. In their dispositive motion, Defendants argue that summary judgment is warranted on Durden's excessive force claim on qualified immunity grounds, and that his state law claim fails as a matter of law. Each of these arguments is addressed below.

**B. Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also*

*Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

The United States Supreme Court has made clear that video evidence substantiating one party's version of events can serve as controlling evidence at the summary judgment stage. *See Scott v. Harris*, 550 U.S. 372, 380-381 (2007). In *Scott*, the Court considered video evidence that came from a camera inside a police car and allowed that evidence to

resolve the parties' conflicting factual accounts. *Id.* at 380. The Court refused to accept the plaintiff's version of the events because it was directly contradicted by the video evidence. *Id.* The Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*; *see also Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018) (where there is a videotape capturing the events in question, the court must view those facts in the light depicted by the videotape).

**C. Analysis**

*1. Claims Against Deputy Otto*

With respect to Deputy Otto, there is no evidence whatsoever that he participated in any of the events at issue in Durden's complaint. Durden alleges that, while the CET was attempting to remove him from his cell, he was "able to identify Officer Otto as [the] one to be stomping my foot by familiarity from prior contact." (ECF No. 1, PageID.7). However, the evidence clearly demonstrates that Deputy Otto was not part of the CET responsible for extracting Durden from his cell. Specifically, the report provided by Defendants identifies all of the deputies who participated in the incident, and Deputy Otto is not included. (ECF No. 27-3). Similarly, at the close of the video recording depicting the events at issue, each of the CET officers involved recites his name; again, Deputy Otto is not among those identified. (ECF No. 32, Ex. 12). And, although Defendants presented this evidence in support of their motion for summary judgment, Durden came forward with no evidence to the contrary. Because there is no genuine issue of material fact that Deputy

Otto was not involved in the events in question, summary judgment is appropriate on Durden's federal and state-law claims against him. Moreover, as discussed below, the video establishes the absence of any excessive force during the incident in question. Thus, even if Otto was present, he would be entitled to summary judgment.

*2. Claims Against Deputy Jones*

*a. Excessive Force*

Defendants argue that Deputy Jones is entitled to qualified immunity on Durden's excessive force claim.[3] (ECF No. 27, PageID.111-16). The doctrine of qualified immunity insulates state actors from liability in close-call situations. *See Saucier v. Katz*, 533 U.S. 194, 206 (2001) (explaining that the defense is intended to protect state actors who must operate along the "hazy border" that divides acceptable from unreasonable conduct). Once the qualified immunity defense is raised, "the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016). A plaintiff must satisfy both prongs, but the Court may take up the questions in whichever order it sees fit. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (abrogating in part *Saucier*, 533 U.S. at 201).

Here, Defendants argue that Durden cannot establish a constitutional violation. In *Rafferty v. Trumbull Cty., Ohio*, 915 F.3d 1087, 1093-94 (6th Cir. 2019), the Sixth Circuit explained the standards applicable to a prisoner's Eighth Amendment claim that a prison

[3] The qualified immunity defense may be raised at any stage of a case. Where it is raised in a motion for summary judgment, courts must weave the summary judgment standard into each step of the qualified immunity analysis. *See Scott*, 550 U.S. at 377-78.

guard subjected him to excessive force. The court noted that such a prisoner must make "a heightened showing that the prison official acted 'maliciously and sadistically for the very purpose of causing harm'":

> The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain. The Supreme Court has explained that [a]mong unnecessary and wanton inflictions of pain are those that are totally without penological justification. However, [t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.
>
> To make out a claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component.
>
> The objective component requires the pain inflicted to be sufficiently serious. As the Supreme Court has stated, not every malevolent touch by a prison guard gives rise to a federal cause of action. Rather, the Eighth Amendment protects prisoners only from that conduct which is repugnant to the conscience of mankind. The objective component of the Eighth Amendment is a contextual inquiry that is responsive to contemporary standards of decency. This Court has held that the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society. Thus, courts should interpret the Eighth Amendment in a flexible and dynamic manner.
>
> The subjective component requires that the prison official act with a sufficiently culpable state of mind. This requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. In some instances, the subjective prong of an Eighth Amendment claim is satisfied by a showing of deliberate indifference, such as in cases concerning medical care, conditions of confinement, or abuse perpetrated by an inmate against another inmate. ***In other contexts, such as when a prisoner alleges excessive force, the subjective component requires a heightened showing that the prison official acted maliciously and sadistically for the very purpose of causing harm.***

*Rafferty*, 915 F.3d at 1093-94 (internal quotations and citations omitted; emphasis added).

The Supreme Court has clarified that it is unnecessary for an inmate to prove that he suffered a significant injury requiring medical attention in order to support an Eighth Amendment claim involving excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Indeed, the "central issue under the Eighth Amendment remains the amount of force used, not the amount of injury. Nevertheless, in *Wilkins* [], the Supreme Court held that an examination of a plaintiff's injuries remains meaningful[.]" *Brooks v. Dillow*, No. 1:15-CV-812, 2016 WL 6493419, at *10 (S.D. Ohio Nov. 2, 2016), report and recommendation adopted, 2016 WL 7034241 (S.D. Ohio Dec. 2, 2016). As the Supreme Court explained in *Wilkins*:

> The "core judicial inquiry," we [have] held, [is] not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." . . .
>
> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson* [*v. McMillian*, 503 U.S. 1, 9 (1992)], not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "'push or shove'" that causes no discernible injury almost certainly fails to state a valid excessive force claim.

*Wilkins*, 559 U.S. at 37-38 (internal citations omitted).

Evaluating Durden's allegations in light of the video evidence, Deputy Jones is entitled to summary judgment on Durden's excessive force claim because no constitutional

violation occurred. The video depicts the CET approaching Durden's cell, commanding him to "put the mattress down!" (ECF No. 32, Ex. 3). Despite the fact that this command was uttered more than once, Durden refused to comply and, instead, continued to throw an unidentified liquid out of his cell. Members of the CET repeatedly ordered Durden to "get down on the ground," "get down on the floor," "come out from behind the mattress," and "lay down on your stomach." (*Id.*). However, Durden refused to cooperate with the deputies. Eventually, the CET entered Durden's cell – continuing to repeatedly order him to "come out from behind the mattress" and "put the mattress down!" (*Id.*, Ex. 4). As the CET entered the cell, one deputy grabbed Durden's mattress and slid it out of the way; an unidentified object was kicked out of the way; and Durden's sheets were dragged out of his cell. (*Id.*). Eventually, three CET members gained control of Durden; contrary to Durden's allegation that they "kicked" and "stomped" him, however, the video shows these deputies primarily on their knees, using their arms to wrestle Durden into submission. The deputies can be heard repeatedly advising Durden to "stop resisting"; eventually, he said – calmly – "I'm not resisting" and the struggle subsided. At that point, Durden was ordered first to get on his knees, then get on his feet, both of which he did without incident and without any expression or indication of pain. CET members walked Durden down a hallway to the restraint chair; again, Durden gave no indication whatsoever that he was in pain or had been brutally kicked or stomped, as he now alleges. (*Id.*, Ex. 5).

The undisputed video evidence makes clear, then, that no excessive force was used in subduing Durden and removing him from his cell, not by Deputy Jones and not by any of the other deputies who were present. There is no indication from the video that Deputy

Jones "kicked" or "stomped" Durden, as he alleges. At most, the video shows that one CET member used his foot to apply pressure to Durden's body to aid other officers in restraining Durden. Particularly considering the volatile circumstances depicted in the video, however, the force applied was not "excessive." This conclusion is supported by the fact that Durden did not contemporaneously complain of pain to his ankle or knee, was in no apparent distress, spoke to the deputies while he was on the ground being subdued, was able to walk normally down the hallway after being removed from his cell, and voiced no allegations of an unlawful application of force at the time. Indeed, after Durden was forcibly removed from his cell, he can be heard saying, "I know, I'm doing fine." (ECF No. 32, Ex. 5, 6). And at another point, Durden even laughed at the deputies as they were trying to secure him in his restraints. (*Id.*, Ex. 7). All of these facts establish that Durden was not subjected to excessive force during the extraction incident in question. *See e.g., Jones v. Lawry*, No. 2:19-cv-49, 2022 WL 844226, at *1-2 (W.D. Mich. Mar. 22, 2022) (finding no excessive force where video showed that "only minimal force was used to remove [the plaintiff] from his cell and to restrain him despite his constant resistance and refusal to cooperate with the Officers"); *Begley v. Tyree*, No. 17-5001, 2018 WL 3244508, at *3 (6th Cir. Feb. 13, 2018) (affirming summary judgment in favor of defendant on plaintiff's excessive force claim where video showed that defendant used reasonable force to subdue a non-compliant inmate).

Finally, although Durden attaches to his complaint medical records showing that he reported left ankle pain to healthcare nearly one week after the extraction (ECF No. 1, PageID.17-20), these records do not raise a material question of fact that would prevent

granting summary judgment in Defendants' favor. First, because the Court's conclusion that no excessive force was applied is based on the undisputed video evidence described above, Durden's self-reported pain a week later is immaterial. Second, immediately following Durden's removal from his cell, he was examined by the jail nurse, who cleared him of any threat of injury. (ECF No. 32, Ex. 11, 12). Finally, x-rays taken on March 3, 2020, revealed only mild soft tissue swelling. (ECF No. 1, PageID.16). This is important because, as noted above, the "core" inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and the extent of injury "is one factor that may suggest 'whether the use of force could plausibly have been thought necessary'" by the guards during the incident in question. *See Wilkins*, 559 U.S. at 37 (internal citations omitted).

In sum, the video evidence depicts a volatile situation where responding corrections officers were required to use force to subdue Durden due to his conduct and non-compliance with their orders. The video does not show any defendant "kicking" or "stomping" Durden, and at most shows the use of a reasonable amount of force given the challenging circumstances confronting the deputies. *See, e.g., Jones*, 2022 WL 844226, at *1-2; *Begley*, 2018 WL 3244508, at *3. Because there is no genuine issue of material fact that Deputy Jones did not apply excessive force during the incident in question, he did not violate Durden's Eighth Amendment rights. Accordingly, summary judgment should be granted on Durden's excessive force claim against Deputy Jones.

*b. State-Law Tort Claims*

Finally, Durden includes one sentence in his complaint asserting that the CET's

actions "constituted an assault and battery under state law."[4] (ECF No. 1, PageID.8). Defendants argue that to the extent Durden is pleading a claim under state law, they are immune from liability. (ECF No. 27, PageID.117-18). The Court agrees.

In *Odom v. Wayne Cty.*, 482 Mich. 459 (2008), the Michigan Supreme Court clarified that lower-level government employees are immune from liability for intentional torts if they have raised the affirmative defense of individual governmental immunity and if their actions satisfy the following: (a) the acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority; (b) the acts were undertaken in good faith, or were not undertaken with malice; and (c) the acts were discretionary, as opposed to ministerial. *Id.* at 480. *Odom* further indicated that a lack of good faith is conduct that demonstrates a malicious intent, capricious action, or corrupt conduct or willful and corrupt misconduct. *See id.* at 475.

Here, Deputy Jones has asserted the affirmative defense of governmental immunity with respect to Durden's state tort claims. (ECF No. 19, PageID.71). Durden does not allege, and the record does not support, any inference that the Deputy Jones was acting outside the scope of his employment when the incident at issue occurred. Indeed, Deputy Jones was functioning as a member of the CET when assisting with removing Durden from

[4] Under Michigan law, assault is defined as "any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich. App. 110, 119 (1991). A battery is the "willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.*

his cell. Moreover, Durden has not alleged – and there can be little doubt – that during the incident, Deputy Jones' actions were discretionary in nature. Finally, there are no facts even tending to suggest that Deputy Jones acted with malice or in bad faith, as described more fully above, *supra* at 9-12. Accordingly, governmental immunity shields Deputy Jones from liability for Durden's state-law assault and battery claims. *Odom*, 482 Mich. at 475.

## III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 27)** be **GRANTED**.[5]

Dated: August 10, 2022
Ann Arbor, Michigan

s/David R. Grand
DAVID R. GRAND
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy

[5] Also pending before the Court is Durden's Motion for Leave to File Amended Complaint, which was filed on December 27, 2021. (ECF No. 26). In that motion, Durden seeks to amend his complaint to add as defendants seven additional members of the CET who he claims were "recently discovered through the discovery process." (*Id.*, PageID.98). Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." However, courts should deny a motion to amend "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citing cases). Here, for all of the reasons discussed above, Durden's excessive force and state law claims would fail as to any of the CET members involved in the incident in question. Accordingly, the Court will enter a separate order denying Durden's Motion for Leave to File Amended Complaint as futile.

hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 10, 2022.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager